440 So.2d 1001 (1983)
John M. TILLER
v.
STATE of Mississippi.
No. 54388.
Supreme Court of Mississippi.
November 9, 1983.
*1002 John M. Tiller, pro se.
Bill Allain, Atty. Gen. by Bill Patterson, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
ROBERTSON, Justice, for the Court:

I.
John M. Tiller has petitioned for leave to withdraw a guilty plea entered to an indictment for armed robbery. Among other things, he alleges that he entered his plea in reliance upon advice from his attorney that he would be eligible while in custody to earn "good time" toward early release as would any other prisoner.
In this state persons convicted of armed robbery have a limited right to earn good time. Such is the result of a legislative enactment effective January 1, 1977. For four years thereafter, however, the Mississippi Department of Corrections (MDC) continued across the board to allow persons convicted of armed robbery to earn good time the same as others. This administration policy was in effect on September 19, 1979, the day Tiller entered his plea.
On January 5, 1981, MDC changed its good time policy. John M. Tiller has been advised that he must serve some two years eight months more than was required under the MDC administrative policy in effect on the day Tiller committed his crime. The advice he alleges he received prior to entering his plea and upon which he alleges he relied, is now seen to have been erroneous. If he can prove what he has alleged, Tiller's plea as a matter of law was involuntary. We reverse and remand for a hearing on the merits of Tiller's application.

II.

A.
This matter is before us upon appeal from the Circuit Court's summary dismissal of Tiller's application. We glean our facts from a combined reading of Tiller's application and the State's brief filed in this Court  indeed, we do not understand the state to contest Tiller's factual allegations.
John M. Tiller was indicted in the Circuit Court of Hinds County, Mississippi, for the crime of armed robbery committed February 4, 1979. Subsequent thereto he and his attorney entered into plea bargain negotiations with the State.
At that time, under an administrative policy of the Mississippi Department of Corrections, "good time" was allowed prisoners convicted of the crime of armed robbery (as well as to prisoners convicted of most other crimes). Good time in a nutshell is a system under which a prisoner by exemplary behavior earns a reduction in his sentence, month by month.[1]
*1003 Against this backdrop, a plea bargain was struck. Under the agreement, Tiller was to waive his right to trial by jury and the other rights constitutionally afforded those accused of criminal acts and enter a guilty plea. In exchange, Tiller was to receive a sentence of 25 years, the first eight to be served and the final seventeen to be suspended. At the conclusion of the eight years of confinement, Tiller was to be released on probation for the next five years.
On September 19, 1979, the plea bargain agreement was consummated. Tiller appeared in the Circuit Court of the First Judicial District of Hinds County, Mississippi, the Honorable William F. Coleman, Circuit Judge, presiding. Judge Coleman explained to Tiller that, because his crime was armed robbery, he would not be eligible for parole or work release. The subject of the good time program, sometimes referred to as earned time, was never mentioned during the plea hearing.
It is uncontradicted in the record, however, that (a) at that time persons convicted of armed robbery were in fact participating in the good time program; (b) Tiller had been correctly advised of this fact by his attorney; and (c) Tiller relied upon eligibility for good time in entering his plea.
Tiller's "time" began to run on February 4, 1979, the date of his arrest. On June 6, 1980, he received a memorandum from the Mississippi Department of Corrections (MDC) advising him, in effect, that if he continued his good behavior he would ultimately earn 1532 days (four years, 71 days) of good time. His eight unsuspended years would be reduced thereby, making him eligible for discharge on September 25, 1983.
Approximately seven months later, on January 5, 1981, to be specific, MDC modified its good time policy. Acting pursuant to an opinion released by the Attorney General of the State of Mississippi, the MDC determined that persons convicted of armed robbery would not be eligible to earn good time until they had served their entire sentence or ten years, whichever was the lesser.
On June 20, 1981, Tiller was advised in an official MDC memorandum that he was eligible for no more good time. His release date was extended from September 25, 1983, to May 31, 1986. Significantly, Tiller was allowed to keep the 554 days of good time he had earned between June 15, 1979, and January 5, 1981. He was simply not eligible for any further good time credits.

B.
On October 7, 1982, John M. Tiller filed in the Circuit Court of Hinds County, Mississippi, his pro se petition, denominated "Notice of Application to Withdraw Guilty Plea" and "Petition for Writ of Error Coram Nobis". In his petition, Tiller set forth the essence of what we have recited above and asked that the Circuit Court "either permit withdrawal of the [guilty] plea or grant specific enforcement of the plea agreement, as appropriate".
On November 4, 1982, the Circuit Court dismissed Tiller's petition summarily. Insofar as the record reflects, no hearing of any sort was held. In the brief two paragraph order entered the same day, the Circuit Judge merely stated:
Having considered the petition, the Court finds that the petition and affidavit fail to demonstrate a reasonable probability to grant the relief requested. Accordingly, the petition is dismissed with prejudice.
In due course, John M. Tiller perfected his appeal to this Court. The matter has been fully briefed and is now ripe for decision.

III.
The courts of this state are open to one incarcerated at the Mississippi State Penitentiary raising questions regarding the *1004 voluntariness of his plea or the duration of his confinement. See, e.g., Hill v. State, 388 So.2d 143, 146 (Miss. 1980); Watts v. Lucas, 394 So.2d 903 (Miss. 1981); Ball v. State, 437 So.2d 423, 425 (Miss. 1983). Rule 8.07 of the Uniform Criminal Rules of Circuit Court Practice provides a procedural vehicle which may be invoked by prisoners presenting such issues.[2]
Rule 8.07 requires that the circuit judge examine the petitioner's papers and that:
(3) If from the showing made in the petition it is manifest that the person whom, or on whose behalf, it is presented is not entitled to any relief, the court can refuse to grant the writ and enter an appropriate order.
On the other hand, unless the application is so lacking in merit as to justify summary dismissal under the standard just noted, the petitioner is entitled to an evidentiary hearing. Sanders v. State, 440 So.2d 278, 284 (Miss. 1983).
As we explain below, if Tiller can prove that which he has alleged  that which we understand the State to concede  he is entitled to relief. Accordingly, the Circuit Judge's summary dismissal was error.

IV.
Tiller first asserts an ex post facto law claim. The State of Mississippi, of course, is without power to enforce against any person an ex post facto law. U.S. Const., art. 1, § 10, cl. 1; Miss. Const., art. 3, § 16 (1890).
A review of statutes in question and their dates of enactment makes clear the inadequacies of this claim. In 1976, Mississippi's parole statute was amended to provide as follows:
No person shall be eligible for parole who shall on or after January 1, 1977, be convicted of robbery or attempted robbery through the display of a firearm. 1976 Miss. Laws, ch. 440, § 79.
In 1980, this statute was amended again to its current form which provides:
(D) No person shall be eligible for parole who shall on or after January 1, 1977, be convicted of robbery or attempted robbery through the display of a firearm until he shall have served ten years if sentenced to a term or terms of more than ten years or if sentenced for the term of the natural life of such person. If such person is sentenced to a term or terms of ten years of less, such person shall not be eligible for parole. 1980 Miss. Laws, ch. 465, § 92; Miss. Code Ann. § 47-7-3 (Supp. 1982).
In 1976, Mississippi's "good time" statute was amended to provide as follows:
No inmate in any event shall have his sentence terminated by administrative good time action until he is eligible for parole as provided in Title 47, ch. 7, Miss. Code of 1972. 1976 Miss. Laws, ch. 440, § 67; Miss. Code Ann. § 47-5-139 (Supp. 1982).
While these laws have been in effect for approximately six years, armed robbery convicts such as Tiller, were allowed to accumulate good time credits toward their sentences until January 5, 1981. On that date an opinion was issued by the Attorney General's office, the crux of which is as follows:
Since Section 47-5-139(7) does not allow a sentence to be terminated by earned time until an inmate is eligible for parole, it is important to determine when an inmate is eligible for parole to correctly administrate earned time.
Section 47-7-3(d) only applies to those persons convicted of armed robbery or attempted armed robbery on or after January 1, 1977. If convicted on or after *1005 January 1, 1977, and the sentence received is a term or terms of ten years or less, the offender is not eligible for parole. Since he is not eligible for parole, he is not eligible to receive earned time. Attorney General's Opinion 156-A, Miss. Department of Corrections, January 5, 1981; State's Brief, p. 2.
The correctness of this opinion is not challenged, nor could it be. See Cooper v. State, 439 So.2d 1277 (Miss. 1983).
A subsequent opinion on the same subject, dated July 2, 1981, provided that the new policy would apply to those who committed the crime of armed robbery after January 1, 1978. State's Brief p. 3. As a consequence of the issuance of these two opinions, prisoners convicted of armed robbery after 1977 who were sentenced to serve less than ten years were administratively barred from earning good time after January 5, 1981, although good time earned prior to that date was not taken away.
In short, the statutory provisions regarding good time have remained unchanged since 1977, well prior to Tiller's offense. Only the administrative interpretation of those statutes by the Mississippi Department of Corrections has changed. Despite this critical point, Tiller demands release under the MDC's former erroneous reading of the statute and cites Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981).
Weaver was a Florida prisoner. The State of Florida had a "gain time" program, comparable to Mississippi's earned time or good time program. Weaver pled guilty to a charge of second degree murder arising out of an incident occurring on January 31, 1976. He received a 15 year sentence. Effective January 1, 1979, Florida by statute amended its gain time program. The net effect of the amendment, as applied to Weaver, was that he would be required to serve over two years more than would have been the case under the program in effect in 1976. The Supreme Court sustained Weaver's claim that Florida was enforcing against him a constitutionally proscribed expost facto law.
Tiller's Weaver argument overlooks the fact that here the statute has not changed. Only the administrative interpretation of the law has changed. An erroneous administrative interpretation of a clearly worded statute is simply not a "law" within the scope and contemplation of the ex post facto clauses of the federal and state constitutions.
It is established that judicial reinterpretations of statutes are not "laws" in this context. See Holguin v. Raines, 695 F.2d 372 (9th Cir.1982). In the constellation of authoritative pronouncements of the sovereign, surely administrative interpretations are even lesser lights.
In an analogous context, Taylor v. Mississippi State Probation and Parole Board, 365 So.2d 621 (Miss. 1978) holds that
administrative correction of a prior misinterpretation of parole laws as applied to the appellant did not violate the ex post facto clause of the United States or Mississippi Constitutions. 365 So.2d at 622.
On the authority of Taylor, Tiller's ex post facto claim must fail.

V.
Tiller's claim that he is entitled to withdraw his guilty plea is another matter. A plea of guilty constitutes a waiver of some of the most basic rights of free Americans, those secured by the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, as well as those comparable rights secured by Sections 14 and 26, Article 3, of the Mississippi Constitution of 1890. See Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279 (1969); Phillips v. State, 421 So.2d 476, 479 (Miss. 1982).
Where a plea of guilty has been intelligently and voluntarily entered, it is sufficient to undergird an unassailable final judgment of conviction. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). On the other hand, where the plea is involuntary any judgment of conviction entered thereon is subject to collateral attack. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
*1006 This Court has recognized that mistaken advice of counsel may in some cases vitiate a guilty plea. In Baker v. State, 358 So.2d 401 (Miss. 1978), this Court stated:
If, as alleged, appellants pleaded guilty under the mistaken advice that they could be subject to capital punishment if convicted at trial, this then, is a factor which may make appropriate a collateral attack ... Such allegation, if true, indicates that defendants were not fully aware of the implications of their plea nor of the true consequences of a trial by jury. Such a circumstance, if properly pleaded and supported by sufficient facts, makes out a case where relief ... may be appropriate. 358 So.2d at 403. [Emphasis added].
See also, Sanders v. State, 440 So.2d 278, 284 (Miss. 1983).
This language describes the sort of situation we have before us today. Tiller unequivocally alleges, in proper form as required by Rule 8.07, that his guilty plea was substantially infected by erroneous advice of counsel regarding his eligibility for good time.
The candor of the State's brief on this point is commendable. At the outset, the State concedes:
At the time that he [Tiller] pled guilty to the crime of armed robbery he was informed that he would be eligible for "earned time" while incarcerated. This information, transmitted to him by his attorney, was one of the reasons he decided to enter a guilty plea.
The Attorney General acknowledges that at the time Tiller entered his plea good time was being allowed persons convicted of armed robbery the same as others, stating:

At the time Petitioner's plea was entered "earned time" was being granted for those convicted of armed robbery. Appellant's trial counsel was apparently aware of this, informed his client of such, and Tiller then chose to plead guilty. Given the state of the law at the time counsel was rendering advice, he was absolutely correct in informing his client that he was eligible for "earned time". [Emphasis added].
Applying applicable substantive rules of law to these facts, there exists more than a reasonable probability that Tiller's guilty plea and accompanying waiver of rights were constitutionally infirm. Certainly it cannot be said that Tiller's involuntariness claim is manifestly without merit. See Sanders v. State, 440 So.2d 278 (Miss. 1983).

VI.
Technically, we are without power to adjudicate the merits of Tiller's petition. No hearing has been held below. No adjudication on the merits has occurred there. What  and all  we have power to accomplish is to reverse and remand for an evidentiary hearing. Should Tiller prove that which he has alleged, all of the substantive relief he could possibly receive is a vacation of his guilty plea and reinstatement of his not guilty plea. The State would then be free to put Tiller to trial under the indictment and, should he be convicted, demand the maximum sentence allowable by law.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
NOTES
[1] In Mississippi, inmates in custody of MDC are grouped into four classes which determine how much, if any, earned time that they may receive. Depending upon his classification, an inmate is entitled to earned time ranging from 0 to 30 days for each month served in reduction of his sentence. Miss. Code Ann. § 47-5-139 (Supp. 1982). Rules promulgated by the State Board of Corrections provide for earned time allowances to be awarded to offenders based upon the performance of the offender. Miss. Code Ann. § 47-5-138 (Supp. 1982). The earned time accumulated by an inmate is subject to forfeiture if he commits offenses of a serious nature and an offender may also be demoted to a less favorable earned time class if it serves to maintain good discipline and efficiency at the institution. Miss. Code Ann. §§ 47-5-138, 47-5-139. However, demotions or forfeitures affecting an inmate's earned time cannot vest until the offender has been given an evidentiary hearing before the MDC classification committee. Miss. Code Ann. § 47-5-104 (Supp. 1982).
[2] Tiller's papers are denominated as "Notice of Application to Withdraw Guilty Plea" and "Petition for Writ of Error Coram Nobis". He has filed a supporting affidavit. In substance he is seeking post-conviction relief. Rule 8.07 of the Uniform Criminal Rules of Circuit Court Practice provides a procedure whereby Tiller may present to the Circuit Court the matters set out in his motion. This rule is entitled "Habeas Corpus". We will treat Tiller's application as one made under Rule 8.07. See Sanders v. State, 440 So.2d 278, 282 fn. 1 (Miss. 1983).