483 So.2d 680 (1986)
Gene COLEMAN
v.
STATE of Mississippi.
No. 56049.
Supreme Court of Mississippi.
January 15, 1986.
Rehearing Denied March 12, 1986.
Barry H. Powell, Gilbert & Powell, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Jack B. Lacy, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and PRATHER and ROBERTSON, JJ.
PRATHER, Justice, for the Court:
The question presented by this appeal is whether the petitioner is entitled to an evidentiary hearing on a habeas corpus petition. The petitioner alleges that his guilty plea was involuntary due to ineffective assistance of counsel and that he is subject to the application of an ex post facto law.
Gene Coleman, the appellant, pleaded guilty in the Circuit Court of the First Judicial District of Hinds County, Mississippi, in February, 1980 to a criminal charge of armed robbery was sentenced to a term of fifteen years imprisonment in the custody of the Mississippi Department of Corrections. In August, 1984, he filed a pro se petition for writ of habeas corpus in the Circuit Court of the First Judicial District of Hinds County, Mississippi, Honorable William F. Coleman, Circuit Judge, in which he claimed:
(1) That the Mississippi Department of Corrections had, in response to an opinion *681 of the Attorney General, changed its policy of awarding earned time in such a way as to deprive him of earned time to which he believed he was entitled, and
(2) That his plea of guilty was involuntary, insofar as his attorney misadvised him of his potential to earn good time. Proceeding without a hearing, the Circuit Court denied the appellant's petition.
The appellant appeals the actions of the Circuit Court in denying his petition without an evidentiary hearing on the voluntariness of his guilty plea.

I.
According to Coleman's pleadings, his guilty plea was upon the advice of his attorney pursuant to a plea bargain agreement. Appellant claims that he relied on the advice of his attorney that he would be eligible for earned good time and would be subject to release after serving seven years of his sentence.
At the time of his plea, the administrative policy of the Mississippi Department of Corrections was to allow good time to persons convicted of armed robbery as well as to prisoners convicted of most other crimes. This policy was in effect notwithstanding statutory provisions to the contrary. Miss. Code Ann. § 47-5-139(7) (1972) states:
No inmate in any event shall have his sentence terminated by administrative earned time action until he is eligible for parole as provided in Title 47, Chapter 7, Mississippi Code of 1972.
Yet Miss. Code Ann. § 47-7-3(d) (1972) states that no person convicted of robbery or attempted robbery on or after January 1, 1977 shall be eligible for parole.
In view of these two statutes, and the administrative policy of the Mississippi Department of Corrections (MDC), the Attorney General of this State rendered an opinion which initiated a change in the administrative policy of the MDC to deny good time credit or armed robbery convictions. The revised policy was placed into effect on January 5, 1981.
Coleman entered his guilty plea during a time when he allegedly was advised that good time credit would be afforded him on his sentence. The change of administrative policy, required that he serve a minimum of ten years term. Coleman contends this change subjects him to an ex post facto "law" and renders the advice and instruction of his attorney erroneous. He also alleged that his plea under such circumstances violated his Fifth, Sixth and Fourteenth Amendment rights to an informed voluntary consensual plea.
As to the ex post facto claim, this issue was answered and dismissed by Tiller v. State, 440 So.2d 1001, 1004-1005 (Miss. 1983), therefore we only address the claim of ineffective advice of counsel issue.

II.
The law of this state on this issue was set forth in Tiller v. State, 440 So.2d 1001 (Miss. 1983), as follows:
The courts of this state are open to one incarcerated at the Mississippi State Penitentiary raising questions regarding the voluntariness of his plea or the duration of his confinement. See, e.g., Hill v. State, 388 So.2d 143, 146 (Miss. 1980); Watts v. Lucas, 394 So.2d 903 (Miss. 1981); Ball v. State, 437 So.2d 423, 425 (Miss. 1983). Rule 8.07 of the Uniform Criminal Rules of Circuit Court Practice provides a procedural vehicle which may be invoked by prisoners presenting such issues.
Rule 8.07 requires that the circuit judge examine the petitioner's papers and that:
(3) If from the showing made in the petition it is manifest that the person whom, or on whose behalf, it is presented is not entitled to any relief, the court can refuse to grant the writ and enter an appropriate order.
On the other hand, unless the application is so lacking in merit as to justify summary dismissal under the standard just noted, the petitioner is entitled to an *682 evidentiary hearing. Sanders v. State, 440 So.2d 278, 284 (Miss. 1983).
440 So.2d at 1003-1004.
... .
Where a plea of guilty has been intelligently and voluntarily entered, it is sufficient to undergird an unassailable final judgment of conviction. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). On the other hand, where the plea is involuntary any judgment of conviction entered thereon is subject to collateral attack. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
440 So.2d at 1005.
Coleman bases his entire argument on Tiller v. State, supra. In Tiller, this Court reversed the dismissal of an application for writ of error coram nobis and remanded to afford Tiller an opportunity to prove by an evidentiary hearing his allegation that he entered his plea of guilty in reliance on advice from his attorney that he would be eligible while in custody to earn "good time" toward early release as would any other prisoner. Here appellant Coleman asserts that he pled guilty in reliance on the advice of counsel that he would be able to earn good time, and in accordance with this Court's ruling in Tiller, is entitled to remand for an evidentiary hearing on the voluntariness of his guilty plea. In Tiller, this Court recognized that mistaken advice of counsel may in some cases vitiate a guilty plea citing Baker v. State, 358 So.2d 401 (Miss. 1978). See also, Williams v. State, 473 So.2d 974 (Miss. 1985).
In a recent parallel, but factually distinguishable opinion, the United States Supreme Court has addressed a charge of ineffective assistance of counsel where an attorney misinformed his client as to parole eligibility prior to the client's entry of a guilty plea. Hill v. Lockhart, ___ U.S. ___, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). This case was granted certiorari to resolve contrary results among the federal circuits. The facts of the Hill v. Lockhart case involve the attorney's incorrect advice on parole eligibility; whereas, in the case sub judice, the attorney's advice was correct when given based upon the administrative policy of MDC. The statute has not changed, but the administrative interpretation of the statute changed. The question here presented is whether the defendant's guilty plea was knowingly and willingly entered with knowledge of the gravamen of his plea and its consequences.
In Hill v. Lockhart, supra, the defendant argued that a guilty plea was involuntary as a result of ineffective assistance of counsel because his attorney misinformed him of parole eligibility. In summary, the Supreme Court answered this charge thusly:
Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771 [90 S.Ct. 1441, 1449, 25 L.Ed.2d 763] (1970). As we explained in Tollett v. Henderson, 411 U.S. 258 [93 S.Ct. 1602, 36 L.Ed.2d 235] (1973), a defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann." Id., at 267 [93 S.Ct. at 1608].
... .
Two terms ago, in Strickland v. Washington, 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984), we adopted a two-part standard for evaluating claims of ineffective assistance of counsel. There, citing McMann, we reiterated that "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id., at 687-688 [104 S.Ct. at 2065]. We also held, however, that "[t]he defendant *683 must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694 [104 S.Ct. at 2072]. This additional "prejudice" requirement was based on our conclusion that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., at 691 [104 S.Ct. at 2067].
Although our decision in Strickland v. Washington dealt with a claim of ineffective assistance of counsel in a capital sentencing proceeding, and was premised in part on the similarity between such a proceeding and the usual criminal trial, the same two-part standard seems to us applicable to ineffective assistance claims arising out of the plea process.
... .
In addition, we believe that requiring a showing of "prejudice" from defendants who seek to challenge the validity of their guilty pleas on the ground of ineffective assistance of counsel will serve the fundamental interest in the finality of guilty pleas we identified in United States v. Timmreck, 441 U.S. 780 [99 S.Ct. 2085, 60 L.Ed.2d 634] (1979):
... .
We hold, therefore, that the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence already set forth in Tollett v. Henderson, supra, and McMann v. Richardson, supra. The second, or "prejudice", requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.
In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. See, e.g., Evans v. Meyer, 742 F.2d 371, 375 (CA7 1984)... .
We accept without hesitation the Hill suggestion that a threshold requisite to the petitioner's entitlement to an evidentiary hearing is that he allege "that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty." The thrust of Tiller is to the same effect: that petitioner is entitled to an evidentiary hearing if he has alleged that he entered his guilty plea in substantial reliance upon the erroneous advice regarding his "good time" eligibility Following Tiller and Williams, however, we reiterate today that, as a matter of the construction of the provisions of our own constitution, no inquiry need be made into the quality of counsel's advice. It is sufficient that the advice has subsequently been established as wrong in substantial particulars. In the Tiller case, advice that one convicted of armed robbery was eligible for good time the same as any *684 other convicted felon qualifies as substantially wrong advice.
In the case sub judice, the allegations that the petitioner was (1) "ill-advised by his paid attorney" to enter a guilty plea of fifteen years, (2) that the "petitioner would be eligible for earned time" and that the "incarceration would be terminated after serving seven years," (3) that the petitioner "relied" on the attorney's advice; and (4) that the petitioner has been denied earned time, "(which was the direct result of petitioner being advised by his attorney to plead guilty)" are assertions sufficient to warrant an evidentiary hearing on this petition.
Therefore, this Court reverses the dismissal by the trial court without an evidentiary hearing and remands for such a hearing to determine the merits of these allegations. Should the trial court be satisfied that the allegations are proved, then the petitioner is entitled to a vacation of his guilty plea and reinstatement of his innocent plea. As in Tiller, the State can then proceed to try Coleman under the indictment.
REVERSED AND REMANDED.
PATTERSON, C.J., and HAWKINS, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
WALKER and ROY NOBLE LEE, P.JJ., concur in result only.
DAN M. LEE, J., not participating.